RMP:JCP
1627-208: 292121

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CA 06 199

| | | |
|---|---|---|
| **PAUL ARPIN VAN LINES, INC.** **Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. No.** |
| | : | |
| **SANTIEGO MOVING & STORAGE CO., INC.** | : | |
| **Defendant** | : | |
| | : | |

**VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

**THE PARTIES**

1. Plaintiff, Paul Arpin Van Lines, Inc. (hereinafter "PAVL") is a Rhode Island corporation with its principal place of business in West Warwick, Rhode Island.

2. Upon information and belief, Defendant, Santiego Moving & Storage Co., Inc., (hereinafter "Santiego"), is a New York corporation with its principal place of business in Valley Cottage, New York.

**JURISDICTION**

3. This court has personal jurisdiction and venue over these Defendants pursuant to a contract between the parties.

4. This court has jurisdiction under 28 U.S.C. Section 1332 because the amount in controversy exceeds the sum of $75,000.00 and there is complete diversity among the parties.

## FACTS

5. PAVL and Santiego entered into an Agency Agreement and Compensation Schedule dated July 16, 1998, amended from time to time, including a Revised Compensation Schedule dated July 11, 2002 (the foregoing referred to collectively herein as the "Agency Agreement").

6. In the Agency Agreement, PAVL and Sanitego agreed to submit to the jurisdiction of any court having jurisdiction in Providence, Rhode Island, in connection with any litigation arising out of or relating to the Agreement.

7. The Agency Agreement specifies that Santiego becomes liable for damages and expenses, including attorney's fees, interest and costs of litigation that PAVL may incur to enforce compliance with the Agency Agreement.

8. On January 19, 2005, by certified letter, PAVL officially terminated the Agency Agreement with Santiego with termination effective on January 24, 2005, (the "Termination Letter").

9. Forthwith upon termination of the Agency Agreement, pursuant to same, Santiego was obligated to cease holding itself out as an authorized agent of PAVL and to cease the use of any bills of lading, stationary, and advertising materials bearing PAVL's name trade names, trademarks, service marks, and/or slogans.

10. The Termination Letter notified Santiego that PAVL was terminating truck leases for four (4) specified units, detailing that the units would no longer be insured by PAVL's insurance carrier in interstate commerce.

11. The Termination Letter demanded that Santiego cease any representation to third parties that it continues to act as an agent for PAVL or that it continues to lease any vehicle to PAVL.

12. The Termination Letter demanded that Santiego immediately cease and desist from its use of the name "Arpin of New York".

13. The Termination Letter demanded that Santiego return all PAVL related materials and remove PAVL logos from its equipment and paperwork.

14. Again, on April 21, 2005, PAVL, via certified letter, demanded that Santiego return all paperwork bearing PAVL logos and cease use of PAVL's name in Santiego's advertisements and on its telephone messaging system.

15. Upon information and belief, Santiego continued, after termination of the Agency Agreement, to hold itself out to the public as an authorized agent of PAVL.

16. Upon information and belief, Santiego continued, after termination of the Agency Agreement, to use PAVL's name in its advertising and on its telephone messaging system.

17. Upon information and belief, as of April 3, 2006, Santiego's voicemail system still indicated that Santiego was an "Agent for Paul Arpin Van Lines".

18. Forthwith upon termination of the Agency Agreement, pursuant to same, Santiego was obligated to obliterate from its equipment, warehouse, office facilities, and premises all identification reflecting any affiliation with PAVL.

19. The Agency Agreement provides for liquidated damages in the sum of two-hundred ($200) per day in the event that Santiego should fail, forthwith upon termination of

the Agency Agreement, to obliterate from its equipment, warehouse, office facilities, and premises all identification reflecting any affiliation with PAVL.

20. The Termination Letter requested that Santiago participate in the winding-up of the parties' relationship, requesting, *inter alia*, Santiego's participation in communications with a PAVL representative to permit said representative to examine Santiego's motor vehicle units to ensure that said units' identification names, logos, and United States Department of Transportation Numbers, owned by PAVL, were removed in compliance with the agreement.

21. Santiego has refused to participate in the winding-up of the parties' relationship as provided for in the Agency Agreement and referenced in the preceding paragraph.

22. Upon information and belief, on or about September 1, 2005, Santiego caused to be operated in or around Bridgeport, Connecticut, a truck bearing the name of Santiego Moving along with PAVL decals.

23. On September 6, 2005, PAVL notified Santiego via certified letter of PAVL's renewed demand that Santiego cease and desist from continued use of PAVL decals on its equipment and, further, citing that portion of the Agency Agreement that prohibits such activities.

24. Despite the September 6, 2005 cease and desist letter as referenced in the prior paragraph, Santiego has continued its maintenance and use of PAVL decals on its equipment.

25. Photographs provided to PAVL by Santiego on or about April 18, 2006 reveal the presence of PAVL's logo on a trailer owned by Santiego's and believed to be used in interstate commerce.

26. Subsequent to PAVL's termination of the Agency Agreement, Santiego has incurred multiple adverse citations flowing from its operation of motor vehicles within its care and control while unlawfully using PAVL state and/or United States Department of Transportation registrations that have negatively impacted upon PAVL.

27. On April 18, 2005, a motor vehicle bearing a license plate/registration owned by and registered to PAVL but remaining unlawfully in Santiego's possession and use, Michigan Registration No. RT5468, (the "Michigan Registration"), passed through a New Jersey Turnpike tollbooth without stopping to pay the toll.

28. As a result of the April 18, 2005 incident referenced in the preceding paragraph, on or about May 20, 2005, PAVL received a *Notice of Enforcement Action* from the State of New Jersey. Said *Notice of Enforcement Action* resulted in the imposition of fine as against PAVL.

29. Santiego's use of PAVL's registration to operate its commercial motor vehicle on an interstate highway on April 18, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

30. On April 21, 2005, a motor vehicle operated by an agent of Santiego bearing PAVL's Michigan Registration passed through a New Jersey Turnpike tollbooth without stopping to pay the toll.

31. Santiego is liable for the actions of its agent described in the preceding paragraph.

32. As a result of the April 21, 2005 incident referenced in the preceding paragraph, on or about May 20, 2005, PAVL received a *Notice of Enforcement Action* from

the State of New Jersey. Said *Notice of Enforcement Action* resulted in the imposition of fine as against PAVL.

33. Santiego's use of PAVL's registration to operate its commercial motor vehicle on an interstate highway on April 21, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

34. PAVL demanded, via certified letter addressed to Santiego dated June 16, 2005, that Santiego immediately cease use of two PAVL license plates remaining unlawfully in its possession, the Michigan Registration and Rhode Island Registration No. 55560 (the "Rhode Island Registration").

35. Subsequent to its expiration in August 2005, Santiego returned the Michigan Registration to PAVL in December 2005.

36. On or about May 17, 2005, the State of New York issued a Citation to Santiego operator, Alfred A. Portella, Jr., ("Portella"), while Portella was operating a truck with PAVL's Rhode Island Registration. Said Citation resulted in the imposition of fine against PAVL.

37. Santiego is liable for the actions of its agent described in the preceding paragraph.

38. Santiego's use of PAVL's registration to operate its commercial motor vehicle on an interstate highway on May 17, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

39. On or about June 17, 2005, the Florida Department of Transportation issued a *Commercial Motor Vehicle Citation* to Santiego operator, Portella while Portella was operating a truck with the Michigan Registration on an interstate highway. Said *Commercial Motor Vehicle Citation* resulted in the imposition of fine as against PAVL.

40. Santiego is liable for the actions of its agent described in the preceding paragraph.

41. Santiego's use of PAVL's registration to operate its commercial motor vehicle on an interstate highway on June 17, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

42. On or about July 10, 2005, the Virginia Department of Transportation issued a citation to Santiego's agent, Portella, while Portella was operating a truck with the Michigan Registration in Virginia. Said Citation resulted in the imposition of fine against PAVL.

43. Santiego is liable for the actions of its agent described in the preceding paragraph.

44. Santiego's use of PAVL's registration to operate its commercial motor vehicle on an interstate highway on July 10, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

45. On or about September 16, 2005, the New York Department of Transportation issued an adverse *Driver Vehicle Examination Report* to PAVL regarding Santiego's agent, Adelso R. Calderon. As indicated in said report, Mr. Calderon was cited for operating a commercial motor vehicle without a commercial drivers' license, which motor vehicle was

unlawfully bearing U.S. Department of Transportation number registered to PAVL. Said *Driver Vehicle Examination Report* negatively impacted upon PAVL's company safety profile.

46. Santiego is liable for the actions of its agent described in the preceding paragraph.

47. Santiego's use of PAVL's U.S. Department of Transportation number relative to its commercial motor vehicle operated on an interstate highway on September 16, 2005 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

48. On or about March 27, 2006, Portella, operating a commercial motor vehicle as an agent of Santiego, was cited for operating a commercial motor vehicle without a commercial drivers' license, which motor vehicle was unlawfully bearing U.S. Department of Transportation number registered to PAVL. Said citation negatively impacted upon PAVL's company safety profile.

49. Santiego is liable for the actions of its agent described in the preceding paragraph.

50. Santiego's use of PAVL's U.S. Department of Transportation number relative to the commercial motor vehicle operated by its agent on an interstate highway on March 27, 2006 was neither authorized by PAVL nor lawful in accordance with the terms of the Agency Agreement pursuant to PAVL's termination of same.

## COUNT I

## BREACH OF CONTRACT

51. Paragraphs 1 through and including 50 of this Complaint are incorporated herein by reference and repeated herein as if fully set forth.

52. This Complaint arises out of and relates to the Agency Agreement and Santiego has sufficient minimum contacts with Rhode Island so as to confer this court jurisdiction over it.

53. This court has personal jurisdiction and venue over this Defendant and the amount in controversy herein is sufficient to confer subject matter jurisdiction over this matter upon this Court.

54. Upon the notification of the termination of the Agency Agreement, as referenced herein at paragraph 6, pursuant to same, Santiego's rights and privileges as an agent of PAVL immediately ceased.

55. Santiego's holding out of itself and continued representation of its status to the public as PAVL's authorized agent after termination of the Agency Agreement in contravention of same constitutes a breach of contract.

56. Santiego's continued use PAVL's bills of lading, stationary, trade names, trademarks, service marks, and/or slogans after termination of the Agency Agreement in contravention of same constitutes a breach of contract.

57. Santiego failure to participate in the winding up process as specified in the Agency Agreement constitutes breach of contract.

58. Santiego's actions as described in the within Complaint amounts to willful and wanton conduct bordering on criminality which conduct justifies an award of punitive damages.

59. Absent injunctive relief, PAVL stands to suffer irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore PAVL to its rightful position.

WHEREFORE, Plaintiff requests the following relief:

(a) the entry of orders and/or judgments providing for the issuance of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Santiego from:

(1) continued use of PAVL's logos, service marks,

(2) continued representation to the public and/or continued holding itself out as an agent of PAVL; and

(3) continued use of PAVL's registrations and/or United States Department of Transportation numbers.

(b) Judgment against the Defendant as to Count I of the within Complaint and an award of compensatory damages in an amount sufficient to confer jurisdiction upon this Court, interest, costs and attorneys' fees;

(c) The imposition of punitive damages;

(d) An award of liquidated damages pursuant to the Agency Agreement dating from September 6, 2005 up to and including each date that Santiego has filed to remove identification names, logos, and United States Department of Transportation Numbers, owned

by PAVL from its trailers, which failure, at minimum, persists as of the date of this Complaint; and

(e) Such further relief as the Honorable Court determines is just and proper.

**COUNT II**

**Violation of the Lanham Act § 43 (15 U.S.C. § 1125)**

60. Paragraphs 1 through and including 59 of this Complaint are incorporated herein by reference and repeated herein as if fully set forth.

61. This Honorable Court has jurisdiction with respect to this Count of the Complaint pursuant to 15 U.S.C. § 1121.

62. Santiego's use of PAVL decals, logos and service marks on its equipment as described in the within Complaint constitutes a violation of the Lanham Act.

63. Santiego's use of PAVL service marks in its advertising as described in the within Complaint constitutes a violation of the Lanham Act.

64. Santiego committed the acts described in the within Complaint with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive the public.

65. Absent injunctive relief, PAVL stands to suffer irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore PAVL to its rightful position.

WHEREFORE, Plaintiff requests the following relief:

(a) Judgment against the defendant as to Count II of the within Complaint;

(b) Injunctive relief Pursuant to 15 U.S.C. § 1116 (a) prohibiting Santiego from use of PAVL's marks including, therein, a provision directing Santiego to file with the court and serve on the PAVL within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which Santiego has complied with the injunction;

(c) An award consisting of

(1) defendant's profits,

(2) all damages sustained by the plaintiff;

(3) the costs of this action; and

(4) attorneys' fees; and

(d) Such further relief as the Honorable Court determines is just and proper.

**COUNT III**

**Unfair Competition**

66. Paragraphs 1 through and including 65 of this Complaint are incorporated herein by reference and repeated herein as if fully set forth.

67. PAVL's name and logos are inherently distinctive.

68. On or about May 19, 2005, PAVL's agent informed Santiego, via electronic mail, that it received indications from a customer that Santiego has informed her, after termination of the Agency Agreement, that it was an agent of PAVL.

69. Public confusion has occurred from Santiego's use of PAVL's trade name.

70. Santiego's conduct as described in the within Complaint amounts to unfair competition.

71. Absent injunctive relief, PAVL stands to suffer irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore PAVL to its rightful position.

WHEREFORE, Plaintiff requests the following relief:

(a) the entry of orders and/or judgments providing for the issuance of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Santiego from:

(1) continued use of PAVL's logos, service marks,

(2) continued representation to the public and/or continued holding itself out as an agent of PAVL;

(b) Judgment against the Defendant as to Count III of the within Complaint and an award of compensatory damages in an amount sufficient to confer jurisdiction upon this Court, interest, costs and attorneys' fees;

(c) The imposition of punitive damages; and

(d) Such further relief as the Honorable Court determines is just and proper.

**COUNT IV**

**Breach of Fiduciary Duty**

72. Paragraphs 1 through and including 71 of this Complaint are incorporated herein by reference and repeated herein as if fully set forth.

73. Pursuant to the Agency Agreement, Santiego agreed to be PAVL's agent.

74. As PAVL's agent, and pursuant to the Agency Agreement, Santiego owed PAVL a fiduciary duty of utmost care and loyalty.

75. Santiego breached his fiduciary duty to PAVL.

76. As a direct and proximate result of Santiego's breach of its fiduciary duty to PAVL, PAVL has sustained damages.

WHEREFORE, Plaintiff, Paul Arpin Van Lines, Inc., demands judgment for breach of fiduciary duty against Santiego for compensatory damages in an amount in excess of the minimum jurisdictional requirements of this Court, plus interest, attorneys' fees, all other remedies at law or in equity, and such other relief as this Court deems appropriate.

PAVL designates Richard M. Peirce as trial counsel.

PLAINTIFF,
PAUL ARPIN VAN LINES, INC.
By its attorneys,

RICHARD M. PEIRCE #0564
JASON C. PRECIPHS #6727
Roberts, Carroll, Feldstein &
Peirce, Incorporated
10 Weybosset Street
Providence, RI 02903
(401) 521-7000 (o); (401) 521-1328 (fx)

Dated: April 28, 2006

## VERIFICATION

I, Robert Caldwell, being duly sworn, upon oath depose and state as follows:

1. I am the Vice President of Administration of Paul Arpin Van Lines, Inc., and have personal knowledge of the facts set forth in the within Verified Complaint;

2. I have read the within Verified Complaint and believe the allegations contained therein to be true and correct to the best of my knowledge and information, and so far as upon information and belief, I believe the information to be true.

Robert Caldwell

STATE OF RHODE ISLAND
COUNTY OF KENT

In West Warwick in said County on the 24th day of April, 2006, before me personally appeared Robert Caldwell to me known and known by me to be the party executing the foregoing instrument and he acknowledged said instrument by him executed to be his free act and deed.

Notary Public

MY COMMISSION EXPIRES
2-10-2010