MPU:JCP
1627-208: 278327

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PAUL ARPIN VAN LINES, INC.** | : | |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. No. 06 199S** |
| | : | |
| **SANTIEGO MOVING & STORAGE CO., INC.** | : | |
| **Defendant** | : | |
| | : | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Now comes Plaintiff, Paul Arpin Van Lines, ("PAVL"), and hereby moves the Honorable Court for an Order, pursuant to Fed. R. Civ. P. 65(b), restraining the defendant, Santiego Moving & Storage, Co., Inc., from: (1) continued use of PAVL's name(s), registered and/or unregistered service marks, logos, decals, and/or other intellectual property of PAVL; (2) representing to any third party or representative of the public that it is acting as an agent of PAVL, impliedly or expressly, directly or indirectly; (3) using, operating, or causing to be operated any motor vehicle on behalf of PAVL; and (4) continuing to use licenses, license plates, motor vehicle registrations, interstate operating authority numbers, and/or USDOT numbers, associated with, owned or registered by or in the name of Paul Arpin Van Lines, Inc.

Plaintiff relies on its Memorandum of Law appended hereto, together with its Complaint, in support of its Motion.

PLAINTIFF,
PAUL ARPIN VAN LINES, INC.
By its Attorneys,

RICHARD M. PEIRCE #0564
JASON C. PRECIPHS #6727
Roberts, Carroll, Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903
(401) 521-7000; (401) 521-1328 (fax)

Date: May 4, 2006.

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within Motion for Temporary Restraining Order and Memorandum of Law in Support of same was mailed, postage prepaid, to the following counsel of record on May 4, 2006:

SANTIEGO MOVING & STORAGE CO. INC.
711 Executive Blvd.
Valley Cottage, NY 10989

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PAUL ARPIN VAN LINES, INC.** | : | |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. No. 06 199 T** |
| | : | |
| **SANTIEGO MOVING & STORAGE CO., INC.** | : | |
| **Defendant** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff, Paul Arpin Van Lines, ("PAVL"), hereby submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 65(b), for an Order of the Court restraining the defendant in the above-entitled action, Santiego Moving & Storage, Co., Inc., ("Santiego"), from: (1) continued use of PAVL's name(s), registered and/or unregistered service marks, logos, decals, and/or other intellectual property of PAVL; (2) representing to any third party or representative of the public that it is acting as an agent of PAVL, impliedly or expressly, directly or indirectly; (3) using, operating, or causing to be operated any motor vehicle on behalf of PAVL; and (4) continuing to use bills of lading, licenses, license plates, motor vehicle registrations, interstate operating authority numbers, and/or USDOT numbers, associated with, owned or registered by or in the name of Paul Arpin Van Lines, Inc.

## I. Factual Background

### 1. The Agency Agreement

On or about April 16, 1998, PAVL and Santiego entered into an Agency Agreement and Compensation Schedule, as amended from time to time, including an Addendum dated July 11, 2002. Copies of these documents are attached hereto collectively as Exhibit A.

The Agency Agreement provides that an agent, upon termination thereof, shall remove all identification reflecting affiliation with PAVL and cease holding itself out as PAVL's agent.

**2. Termination of the Agency Agreement**

On January 19, 2005, by certified letter, PAVL officially terminated the Agency Agreement with Santiego, "due to unresolved worker's compensation matters", with termination effective on January 24, 2005, (the "Termination Letter"). More particularly, PAVL elected to terminate its relationship with Santiego due to Santiego's failure to secure adequate worker's compensation coverage.

In the Termination Letter, PAVL requested that Santiego return all PAVL related materials and to remove PAVL logos from its equipment and paperwork. Furthermore, PAVL terminated truck leases for four (4) specified units, which units are owned by Santiego and were leased by PAVL prior to said termination. PAVL's Termination Letter explicitly notified Santiego that all motor vehicle operators who had been qualified and authorized by PAVL to operate the aforementioned motor vehicles have been terminated and are no longer authorized to operate any motor vehicle on behalf of PAVL.

Within the Termination Letter, PAVL demanded that Santiego cease any representation to third parties that it continues to act as an agent for PAVL or that it continues to lease any vehicle to PAVL. PAVL further requested that Santiago participate in the winding-up of the parties' relationship, requesting, *inter alia*, Santiego's participation in communications with a PAVL representative to permit said representative to examine Santiego's motor vehicle units to ensure that said units' identification names, logos, and United States Department of Transportation Numbers, owned by PAVL, were removed in compliance with the agreement. Finally, in the Termination Letter, PAVL demanded that Santiego immediately cease and desist from its use of the name "Arpin of New York".

### 3. Post-Termination Violations of the Agency Agreement

#### a. Santiego's continued use of PAVL service marks/logos and its unauthorized representation of its status to the public as PAVL's agent

After the effective date of termination, it came to PAVL's attention that Santiego has continued to flagrantly use certain PAVL trademarks and service marks in contravention of the Agency Agreement. Moreover, PAVL has learned that Santiego continues to hold itself out to the public and to state/federal licensing authorities as its agent.

First, it came to PAVL's attention that Santiego continued, post-termination, to use PAVL's name in its advertising and on its telephone messaging system. In response, on April 21, 2005, PAVL mailed a certified letter to Santiego demanding, *inter alia*, the return of paperwork bearing PAVL logos and the cessation of Santiego's use of PAVL's name in its advertisements and on its telephone messaging system. Furthermore, in response to the ongoing violations, on May 19, 2005, PAVL's agent informed Santiego, via electronic mail, of the situation, advising Santiego that it should not represent itself as a PAVL affiliate.

Despite the aforementioned notices, upon information and belief, Santiego's use of PAVL's logo on its truck(s) continues. More recently, on or about September 1, 2005, one of PAVL's owner operators observed a truck in Bridgeport, Connecticut, bearing the name of Santiego Moving along with PAVL decals (the "Bridgeport incident"). In response to the Bridgeport incident, on September 6, 2005, PAVL corresponded with Santiego again, demanding that Santiego cease and desist from continued use of PAVL decals on its equipment. and, further, citing that portion of the Agency Agreement that prohibits such activities, inclusive of the liquidated damages provision therein.

**b. Santiego's continued use of PAVL license plates and registrations.**

In addition to Santiego's use of PAVL's service marks, it has come to PAVL's attention from multiple regulatory authorities that Santiego continues to utilize PAVL's license plates and registrations, now associated, by Santiego, with operators and/or motor vehicles that PAVL neither owns nor leases and does not authorize.

First, PAVL was twice cited by New Jersey State when a Santiego operator, driving a truck bearing one of PAVL's license plates, ran through toll booths in the state without stopping to pay, (the "toll incidents"). The first such incident occurred on April 18, 2005. Thereafter, on or about May 20, 2005, PAVL received a New Jersey *Notice of Enforcement Action* flowing from a second toll incident on April 21, 2005. The second of the toll incidents involved a Santiego truck bearing the same license plate.

In response to the toll incidents, PAVL mailed a certified letter to Santiego on June 16, 2005, demanding: (1) that Santiego immediately cease use of two PAVL license plates (Michigan Registration No. RT5468 and Rhode Island Registration No. 55560); and (2) that Santiego return said plates to PAVL's Safety Department.

Unfortunately, after the toll incidents, additional violations persist. After its notice regarding the toll incidents, PAVL received a *Commercial Motor Vehicle Citation* from the Florida Department of Transportation stemming from an incident that occurred on June 17, 2005, (the "Florida Citation"). On June 17, 2005, Florida law enforcement agents cited another Santiego operator, Alfred A. Portella, Jr., while driving a truck with PAVL's license plate on Interstate 95, for operating a vehicle overweight by 2,260 pounds. *See* Exhibit B.

Next, PAVL received an adverse *Driver Vehicle Examination Report* from the New York Department of Transportation regarding yet another Santiego operator, Adelso R. Calderon. *See* Exhibit C. As indicated in said report, New York State declared Mr.

Calderon "Out Of Service", citing him for operating a commercial motor vehicle (bearing a PAVL registered U.S. Department of Transportation number) without a commercial drivers' license.

Finally, on or about March 27, 2006, Alfred A. Portella, Jr., operating a Santiego truck, was cited by the state of Maryland for operating a commercial motor vehicle without a commercial license, which truck was unlawfully bearing U.S. Department of Transportation number registered to PAVL (USDOT# 49922). This citation negatively impacted upon PAVL's company safety profile. *See* Exhibit D.

In response to further demands by PAVL, Santiego's principal. Giulio Santiego, emailed agents of PAVL, indicating that Santiego could not produce paint shop bills, representing that PAVL decals were removed from Santiego's trucks in-house. In the email, Mr. Santiego further represented that, "The photos will speak for themselves." *See* Exhibit E. On the following day, April 18, 2006, Mr. Santiego emailed six (6) photos to PAVL. *See id.* Said photos do, indeed, speak for themselves. Two of the six images[1] reveal the clear presence of PAVL logos on Santiego's trailers in two locations. Conspicuously absent from the set of photos sent by Mr. Santiego was any photographic representation of Unit #30291, the truck involved in the March 27, 2006 roadside incident in Maryland.

## II. ARGUMENT.

### 1. Plaintiff Is Entitled To Injunctive Relief.

To obtain injunctive relief in the First Circuit, a plaintiff must make a showing as to each of four criteria: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits;

[1] The two images that reveal Santiego's maintenance of PAVL logos were entitled: (1) IMG_01701.JPG; and (2) IMG_01761.JPG. Both photos were among the six pictures emailed from "GIULIO@aol.com", known to PAVL as Mr. Santiego's email address, to Anita LaBossiere (alabossiere@arpin.com).

and (4) that the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981) *quoting, Women's Community Health Ctr., Inc. v. Cohen*, 477 F .Supp. 542, 544 (D.Me. 1979). Here, as PAVL is able to make the requisite showings, PAVL is entitled to the injunctive relief requested herein.

**1. <u>Plaintiff Will Establish a Reasonable Likelihood of Succeeding On The Merits Of Its Claims.</u>**

**a. Breach of Contract.**

Based on the contract as well as Rhode Island and federal law, Santiego has breached the Agency Agreement. First, PAVL is able to show that Santiego has repeatedly held itself out as an authorized agent of PAVL after termination of the Agency Agreement, in contravention thereof. Next, PAVL is able to show that Santiego has continuously utilized PAVL's trademarked logos and decals and has used the names "Arpin" and Paul Arpin Van Lines, Inc., alone or in combination with other words or phrases, in Santiego's advertising, both on its motor vehicles and otherwise. Finally, PAVL is able to show that Santiego, in contravention of both the Agency Agreement and federal and state law has continued its use of PAVL licenses and registration numbers.

As evidenced by the plain and unambiguous language contained in the Agency Agreement, which language sets forth Santiego's duties after termination of the Agency Agreement, Santiego is clearly prohibited from engaging in any of the activities complained of in the preceding paragraph. (Agency Agreement at 14-15, § V(F), ¶¶ 5, 6, 8, 9.) Moreover, the relevant portions of the Agency Agreement prohibiting these activities, post-termination, contain provisions for liquidated damages and, further, anticipate the need for PAVL to seek injunctive relief in the event that such violations occur. (Agency Agreement at 14-15, § V(F), ¶¶ 5, 6.)

**b. PAVL's trademark, service mark, and unfair competition claims.**

Section 43 of the Lanham Act, under which Count II of the Complaint is brought, provides that:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Eight factors are typically used to assess the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 15 (1st Cir. 2004), *citing, I.P. Lund Trading, ApS v. Kohler Co.,* 163 F.3d 27, 43 (1st Cir. 1998). These factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts of a case. *See id.*

The same likelihood of confusion requirement applies to claims under Rhode Island common law for unfair competition and service mark infringement. *See DeCosta v. Viacom Int'l, Inc.,* 981 F.2d 602, 606-07 (1st Cir.1992) (applying collateral estoppel to prevent relitigation of likelihood of confusion issue under Lanham Act when that issue had already been decided in earlier suit under Rhode Island common law).

Applying the eight Lanham Act factors to the facts in this action, it is clear that PAVL has exhibited a likelihood of success on the merits with respect to its trademark and

service mark claims along with its state law claims for unfair competition. To begin with, the first two factors are not at issue. PAVL can show that Santiego continues to use its mark and it cannot be disputed that Santiego and PAVL are involved in the same industry. Likewise, with respect to the fourth and fifth factors, the relationship between the parties' advertising and the classes of prospective purchasers, the past relationship between the parties speaks for itself. Santiego continues to use advertising developed by or developed in conjunction with PAVL during the existence of the Agency Agreement. The key here is the sixth factor: evidence of actual confusion.

"Actual confusion is commercially relevant if the alleged infringer's use of the mark 'could inflict commercial injury in the form of ... a diversion of sales, damage to goodwill, or loss of control over reputation' on the trademark holder." *Beacon Mut.*, 376 F.3d at 15 (*citing The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 963 (2d Cir. 1996)). Here, Santiego's use of PAVL marks creates actual confusion. It is simply impossible to control PAVL's sales, goodwill and/or reputation when Santiego sends its agents across the continent in vehicles bearing PAVL's marks. Santiego's actions amount to clear violations of the Lanham Act and PAVL is entitled to relief thereunder.

**2. PAVL Will Suffer Irreparable Harm If This Court Denies Its Request For Injunctive Relief.**

Though all elements required for injunctive relief are vital, "the prime requisite for injunctive relief is the threat of irreparable future harm." *National Truck Carriers v. Burke,* 608 F.2d 819 (1st Cir. 1979). The harm cannot be speculative, and subjective apprehensions and predictions cannot establish an immediate threat of irreparable harm. *See, e.g. In re Rare Coins of America,* 862 F.2d 896, 901 (1st Cir. 1988). Here, PAVL is able to show that it will suffer irreparable harm in the absence of the injunctive relief requested.

Santiego's use of PAVL's trademarks and service marks underlies its complaint regarding breach of contract. During the period of the parties' agency relationship, Santiego served a particular territory. Among other injuries that PAVL continues to sustain, so long as Santiego is permitted to continue its use of PAVL's marks, PAVL is handicapped in negotiations with prospective agents in the regarding the same territory.

With respect to PAVL's trademark, service mark, and unfair competition claims, notably, the First Circuit has held, in the trademark context, that, "irreparable harm may be shown even in the absence of actual injury to plaintiff's business based on plaintiff's demonstration of a likelihood of success on the merits on its claim." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, (1st Cir. 1998) *quoting Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1013 (D.Mass.1988) (citing *Camel Hair & Cashmere Institute,* 799 F.2d 6, 14 (1st Cir. 1986)("There is considerable authority for the view that the irreparable injury requirement is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's reputation.")) As PAVL can show a likelihood of success on the merits of its trademark claims, PAVL will suffer irreparable harm if Santiego is permitted to continue its use of PAVL's trademarks.

Likewise, PAVL will continue to suffer irreparable harm should Santiego continue to hold itself out as PAVL's agent to the public and to law enforcement authorities nationwide. PAVL continues to be notified of fines and penalties associated with Santiego's unauthorized use of its licenses and flowing from Santiego's misrepresentations that it is associated with PAVL. Each encounter with law enforcement involving a motor vehicle bearing PAVL's logo, license plate and/or registration number(s) constitutes a gross misrepresentation of the parties' agency relationship and PAVL continues to be injured, financially, in terms of its business reputation, and otherwise.

**3. The injury to PAVL outweighs any harm which granting injunctive relief would inflict on Santiego and the public interest will not be adversely affected by the granting of injunctive relief.**

Should this Court grant the injunctive relief requested, Santiego stands to suffer no harm. To the contrary, forcing Santiego to cease and desist from continued violations, which violations irreparably injure PAVL while simultaneously exposing Santiego to liquidated damages assessed *per diem*, would actually assist Santiego.

Likewise, the injunctive relief requested herein will not adversely impact the public. Confusion regarding the trademarks and service marks at issue is detrimental to the public. Likewise, with respect to ongoing law enforcement and motor vehicle regulatory issues, the public's best interest is served when: (1) each motor vehicle bears a license tag and registration number accurately reflecting its ownership identity and status; and (2) consumers are not misled as to agency relationships with respect to shipping and moving transactions, where valuable and/or priceless items are routinely at issue and the safety of the public roadways is necessarily implicated.

## IV. CONCLUSION.

For the foregoing reasons, PAVL requests that the Court grant its Motion for a Temporary Restraining Order.

PLAINTIFF,
PAUL ARPIN VAN LINES, INC.
By its Attorneys,

RICHARD M. PEIRCE #0564
JASON C. PRECIPHS #6727
Roberts, Carroll, Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903
(401) 521-7000; (401) 521-1328 (fax)

Date: May 4, 2006.